UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------x
                          :

MICHAEL BROCKMAN             :          3:19 CV 6 (JAM)
                          :
v.                              :
                          :
NAES CORPORATION         :          DATE: DEC. 5, 2019
                          :
-------------------------------------------------------x

RULING ON DISCOVERY LETTER BRIEFS (DOC. NOS. 29, 30, 42, 43 & 45)

On January 3, 2019, the plaintiff, Michael Brockman, commenced this action against his former employer, NAES Corporation, alleging racial discrimination and retaliation. (Doc. No. 1). On November 8, 2019, the parties alerted the Court (Meyer, J.) to a discovery dispute (Doc. No. 28), and after expedited briefing, the Court (Meyer, J.) referred the parties' discovery dispute to the undersigned. (Doc. No. 31). The Court held a series of telephonic discovery conferences, during which it resolved most of the issues involved in the discovery dispute, leaving outstanding the defendant's objections to the plaintiff's Interrogatory Nos. 6 and 10 and Request for Production Nos. 11 and 37, which had not been addressed in the parties' briefs. (*See* Doc. Nos. 32-40). In addition, the parties could not resolve the plaintiff's objection to the defendant's request to reconvene the plaintiff's deposition. Consequently, the Court ordered the parties to confer again to try to resolve the defendant's outstanding objections to those Interrogatories and Requests for Production and the plaintiff's objection to continuing his deposition.

Although the parties reached an agreement to Request for Production No. 37 (*see* Doc. No. 42 at 1), the parties did not come to a resolution as to Interrogatory Nos. 6 and 10, Request for Production No. 11, or the proposed continuation of the plaintiff's deposition. Thus, as directed by the Court, on December 2, 2019, the parties filed simultaneous briefs addressing these remaining

issues. (Doc. Nos. 42-43). The defendant filed a supplemental response on December 4, 2019. (Doc. No. 45).

A.     <u>INTERROGATORY NO. 6</u>

In Interrogatory No. 6, the plaintiff asks the defendant to:

> Identify all persons who have been disciplined in any way (including termination) by Defendant at the Waste Processing Facility in Hartford from January 1, 2015 to the present for violating any company policy. For each person so identified, please provide the following: (1) the employee's name, address and phone number; (2) job title; (3) dates of employment; (4) rules violated; (5) discipline issued and (6) . . . all documents related to said discipline.

(Doc. No. 42 at 1). In response, the defendant provided a list of unidentified individuals who have been disciplined at the Hartford facility from January 1, 2015 to present, with a list of the alleged violations and discipline. (Doc. No. 43 at 3). After reviewing the responses, the plaintiff's counsel asked for a clarification of the discipline codes used on the list and an explanation of whether any of the listed individuals were repeat offenders. (Doc. No. 42 at 1). Additionally, the plaintiff's counsel agreed to limit the request to the identification of only those individuals who were disciplined for issues other than attendance, which would be limited to six individuals. (Doc. No. 42 at 2).

Although the defendant objected to this interrogatory, it provided responsive information in a "good faith effort to resolve" this dispute. (Doc. No. 43 at 3). Defense counsel objects to providing additional information "since [the] [p]laintiff has not asserted any basis to claim that any of the disciplined employees are similarly situated to [the] [p]laintiff <u>in any way</u>." (Doc. No. 43 at 3) (emphasis in original).

The plaintiff was not disciplined during the course of his employment (Doc. No. 43 at 2 & Ex. A), thus, the discipline of other employees at the Hartford facility, dating back to almost two years prior to the plaintiff's employment, would be irrelevant in that these individuals are not

similarly situated to the plaintiff. That, however, is not why the plaintiff seeks this information. The plaintiff accused his supervisor of engaging in racially harassing behavior, which the defendant investigated; his supervisor was made to apologize for his behavior, but he was not disciplined. (Doc. No. 42 at 2). The plaintiff, therefore, seeks this disciplinary information to discover whether other employees engaged in racially harassing behavior and were not disciplined. *On or before December 17, 2019,* the defendant shall supplement its response to include both the code sheet explaining the type of offenses committed and the Code of Conduct explaining the abbreviations for the discipline noted for the six individuals who the plaintiff referenced.

B.    <u>INTERROGATORY NO. 10 AND REQUEST FOR PRODUCTION NO. 11</u>

In Interrogatory No. 10, the plaintiff asks the defendant to:

> Identify every employee who worked on March 9, 2018 at Defendant's Waste Processing plant in Hartford.  For each person so identified, please provide the following: (1) their name, address and phone number; (2) the job title; (3) the hours that they worked; (4) the location of the facility that they worked in; and (5) identify all documents which relate to this answer.

(Doc. No. 42 at 2).

Similarly, in Request for Production No. 11, the plaintiff asks the defendant to: "Produce all documents, including payroll records or schedules showing all employees who worked on March 9, 2108 at the WPS facility, the hours that each employee worked and their job title." (Doc. No. 42 at 2-3).

In response, the defendant provided a list of NAES employees who worked on that date, with a designation of those who worked the night shift.  The plaintiff argues that there were other individuals working as temporary employees; he identifies the names of the subcontracting agencies used at that time and believes he saw a spreadsheet that identified the laborers, when they worked, and what they were paid.  (Doc. No. 42 at 3-4).  The defendant, however, "has repeatedly

confirmed that it does not have a reasonable means to compile the requested information beyond what has already been provided." (Doc. No. 43 at 4).

"[U]nder Rule 26(b)(1), . . . [a] literal reading of the Rule requires the disclosure of the identities of all individuals who have knowledge of any discoverable matter, whether or not the individual will be called as a witness." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 Cv. 8144 (SWK), 2008 WL 2941215, at *2 (S.D.N.Y. July 30, 2008) (quoting *Norflet v. John Hancock Fin. Servs., Inc.*, 04 Civ. 1099 (JBA), 2007 WL 433332, at *2 (D. Conn. Feb. 5, 2007)). The plaintiff testified that the incident occurred during a seven-minute window and that he saw six people in the truck-wash work room on the day he allegedly discovered the swastika painted on the wall. (Doc. No. 43 at 4 & Ex. A at 258-60). Thus, the plaintiff is not entitled to information related to every employee and the entire payroll for that date. Moreover, the scope of a request made under Rule 26(b) must be limited to the production of "items in the responding party's possession, custody, or control[.]" FED. R. CIV. P. 34(a)(1).

The list of subcontracting agencies it has used, however, is within the defendant's custody or control, and the defendant should make reasonable efforts to identify the spreadsheet identified by the plaintiff, and, at least confirm if such a document exists. (Doc. No. 45 (noting that defendant has not had an opportunity to "investigat[e] whether any such document even exists)). Accordingly, *on or before December 17, 2019*, the defendant shall produce information related to all employees, including temporary employees, working during the shift in question on March 9, 2018, that is within its "possession, custody or control[,]" and, the defendant cannot locate any further information, it shall inform the plaintiff of its efforts to respond to this request.

C.      CONTINUED DEPOSITION OF THE PLAINTIFF

During his deposition, the plaintiff was asked about his tax returns and, in response to that line of questioning, he became emotional.  (Doc. No. 43 at 5, Ex. A at 404-05; *see* Doc. No. 29 at 5; Doc. No. 30 at 2-3).  At that point, defense counsel sought "predicate facts" relating to the plaintiff's tax returns and the involvement of his father,[1] with the intention to "then ask how [the plaintiff] felt about it."  (*Id.*). The plaintiff's counsel objected to defense counsel's questions because "[defense counsel was] not asking in the context of emotional distress[.]" (*Id.*).  The objections used up the remaining time allotted for the plaintiff's deposition, thus, the defendant seeks an order allowing defense counsel to complete its deposition of the plaintiff.  (Doc. No. 43 at 4-5). The plaintiff's counsel has agreed to re-produce the plaintiff, but seeks an order limiting the deposition to thirty minutes for the purpose "of inquiring as to whether the tax filing issue related to his father caused him [to suffer any] emotional distress."  (Doc. No. 42 at 4-5).

Pursuant to Rule 30(c)(3) of the Federal Rules of Civil Procedure, a "person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." The plaintiff's objections during his deposition do not fall within these accepted categories.  Moreover, the parties explicitly "held open" the plaintiff's deposition "by agreement due to documents that had not been produced in advance of the deposition."  (Doc. No. 45).  The parties have not informed the Court how much time they anticipate needing to address these additional documents. Thus, the Court will not cap the time for the deposition. When the plaintiff's deposition is reconvened, however, defense counsel is allotted thirty minutes to complete inquiry into the specific topic of the plaintiff's tax returns and his father, and the impact this topic had on the plaintiff's emotional state.

---

[1] Although detailed in the deposition transcript, counsel refrain from discussing the specifics of this sensitive topic in their briefing; the Court follows suit in this Ruling as the specifics are not necessary to the resolution of this issue.

D.    <u>CONCLUSION</u>

Accordingly, this Court concludes that for the reasons stated in the previous memoranda following the telephonic discovery conferences (*see* Doc. Nos. 34 and 37), and for the reasons stated herein, the relief requested in the various discovery letter briefs (Docs. No. 29, 30, 42, 43 and 45) is GRANTED IN PART and DENIED IN PART.[2]

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 5th day of December, 2019.

                                            __/s/ Robert M. Spector, USMJ_____
                                            Robert M. Spector
                                            United States Magistrate Judge

---

[2] As discussed during the previous discovery conferences, if either counsel believes that settlement discussions would be productive, she shall contact Chambers.